UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE, ppa Mother Doe and<br>MOTHER DOE, individually,<br>        Plaintiffs,<br><br>v.<br><br>DUBECK KIM, CHATA DICKSON,<br>RICHARD MARTIN, SUSAN LANGER,<br>NEW ENGLAND CENTER FOR CHILDREN,<br>NASHOBA REGIONAL SCHOOL DISTRICT<br>and TOWN OF BOLTON,<br>        Defendants. | CIVIL ACTION NO.<br>05-121163-RWZ |

**PLAINTIFFS' OPPOSITION TO DEFENDANT NASHOBA REGIONAL DISTRICT'S MOTION TO DISMISS (INCORPORATING MEMORANDUM)**

**NOW COMES,** the plaintiffs John Doe, ppa Mother Doe and Mother Doe ("Plaintiffs"), individually respectfully requests that this Honorable Court deny the defendant Nashoba Regional School District's ("District") Motion to Dismiss ("Motion to Dismiss") on the following grounds:

1. that the District failed to comply with Local Rule 7.1(A);

2. that the Plaintiffs' claims are not barred by Mass. Gen. Laws ch. 258, § 10(j);

3. that the Plaintiffs' have alleged sufficient facts to support a § 1983 claim in that they have alleged that the District acted with deliberate indifference in failing to respond to Mother Doe's complaints concerning the New England Center for Children and its employees' conduct towards John Doe and that their deliberate indifference was egregious and conscience shocking;

4. that Title IX does not preempt § 1983 claims against non Title IX funding recipients;

5. that the Plaintiffs' have alleged sufficient facts to support a Title IX Claim and the District's control over NECC and its employees for, among other

      things, the District could have relocated Minor Plaintiff to another school as requested by Mother Doe;

6. Like Title IX's implied right of action, a Court may infer an implied right of action in Mass. Gen. L. ch. 119, § 51A; and

7. that the Plaintiffs have alleged sufficient facts to make a prima facie case that their rights under Mass. Gen. L. ch. 76, § 5 were violated.

which grounds are set forth in more detail below:

## FACTS

John Doe, ppa Mother Doe ("Minor Plaintiff") is under the age of eighteen, is a resident of the defendant Town of Bolton ("Town") and has been evaluated as a student having special educational needs. Under Massachusetts General Laws chapter 40, section 4E, the Town is obligated to provide public education to the minor residents of the Town including the Minor Plaintiff. The Town is part of the defendant Nashoba Regional School District ("District") and thus the District is obligated to provide public education to the minor residents of the Town including the Minor Plaintiff. (Complaint at ¶¶ 11-13.)

### Town and District's Failure to Provide Education under the Minor Plaintiff's Individualized Education Program.

Minor Plaintiff's Individualized Education Program ("IEP"), in addition to a full-time one-on-one educational program, calls for a sixteen to twenty hour per week home study program. (Complaint at ¶ 14.) Although Minor Plaintiff was initially given a home study program, the District failed to pay the teacher and the teacher quit. (Complaint at ¶ 15.) Despite the Minor Plaintiff's IEP requiring a home study program, Minor Plaintiff was without a home study program for a long period of time. The District told plaintiff Mother Doe ("Mother Doe") that she would have to hire a babysitter and perform the work of the home programmer herself. (Complaint at ¶ 16.) Mother Doe found a teacher

who agreed to be Minor Plaintiff's home programmer and the District agreed to and did hire that teacher as a home programmer. However, the District provided that home programmer with materials that were clearly below Minor Plaintiff's educational level. The District later accused the home programmer of not wanting to do the program and fired her. The District told Mother Doe that the home programmer had quit. The District has failed to replace the home programmer for over a year. (Complaint at ¶ 17.)

Minor Plaintiff's IEP also requires a bus monitor, but the School District again told Mother Doe that they couldn't find anyone for the position. On numerous occasions, Mother Doe suggested that Minor Plaintiff's seventeen year old brother could be the bus monitor, but the School District never responded. In the meantime, Mother Doe had to drive Minor Plaintiff to and from school. (Complaint at ¶ 18.) Mother Doe was never informed of any deadlines for filing with the District for reimbursement for driving Minor Plaintiff to and from the defendant New England Center for Children ("NECC") with whom the District, on behalf of the Town, had contracted to provide education services to the Minor Plaintiff. When Mother Doe filed for reimbursement at the end of the year, the District denied her request for reimbursement because the "fiscal year had ended." (Complaint at ¶ 19.) When, Mother Doe could no longer drive Minor Plaintiff to and from NECC, the School District finally agreed to hire Minor Plaintiff's seventeen year old brother as a bus monitor. (Complaint at ¶ 20.)

### The Treatment of the Minor Plaintiff at the hands of NECC and its Employees.

Minor Plaintiff's IEP also called for a one-on-one educational program. (Complaint at ¶ 21.) The District, acting as an agent for the Town, contracted with

NECC to have NECC provide a one-on-one educational program to Minor Plaintiff for the 2002-2003 school year. (Complaint at ¶ 22.)

During relevant time period, defendant Dubeck Kim ("Defendant Dubeck"), defendant Chata Dickson ("Defendant Dickson"), defendant Richard Martin ("Defendnat Martin") and defendant Susan Langer ("Defendant Langer") were employed by NECC. (Complaint at ¶ 23.) Defendant Dubeck was employed as a special needs teacher by NECC from September, 2002 to August, 2003. (Complaint at ¶ 24.)

Minor Plaintiff attended NECC and was assigned Defendant Dubeck as his "main teacher" and "case manager" for the school year beginning in September, 2002 and was caused to suffer over ten months of physical injury, indignities, humiliation, severe emotional distress, mental anguish and invasion of his bodily integrity and still continues to suffer emotional distress and mental anguish to this date as a result of Defendant Dubeck's harassing and abusive conduct which unlawful, unwarranted and abusive conduct included, among other things, Defendant Dubeck flashing his penis at Minor Plaintiff, Defendant Dubeck encouraging Minor Plaintiff to flash his penis by telling Minor Plaintiff that it was a polite thing to do, Defendant Dubeck bending Minor Plaintiff's finger backwards, Defendant Dubeck putting his hands on Minor Plaintiff's neck and scratching Minor Plaintiff's neck, and Defendant Dubeck kicking Minor Plaintiff in the back. (Complaint at ¶ 25.)

The educational program NECC assigned Minor Plaintiff, through Defendants Dubeck, Dickson, Martin and Langer was mentally and emotionally abusive and educationally damaging for the educational program included, among other things, (a) Minor Plaintiff was denied access to his personal belongings including Minor Plaintiff's

Bible which was confiscated from him for approximately three days, (b) Minor Plaintiff was denied "rewards" if he failed to any one of sixteen feats, (c) Minor Plaintiff was given inappropriate rewards such as Metallica music which music is aggressive and encourages negative behavior, and (d) Minor Plaintiff's negative behavior was videotaped without permission from Mother Doe and then Minor Plaintiff was required to watch the videotape. (Complaint at ¶ 26.)

In or about January of 2003, Mother Doe, unhappy with NECC's educational program for Minor Plaintiff and its treatment of Minor Plaintiff, asked the District to look for a new school and they agreed. (Complaint at ¶ 27.) After January of 2003, Mother Doe continually asked the status of finding a new school and was told by the District that they had their "feelers out" but provided no response. (Complaint at ¶ 28.) The District did not look for a new school for Minor Plaintiff at any time from January, 2003 until late August of 2003. (Complaint at ¶ 29.)

On or about July 14, 2003, Minor Plaintiff came home from the NECC without his shorts on and wearing only his boxer shorts. (Complaint at ¶ 30.) At various times, Minor Plaintiff reacted negatively to Defendant Dubeck's abuse and was restrained by employees of NECC. (Complaint at ¶ 31.) As a result of Defendant Dubeck's conduct, Minor Plaintiff has suffered emotional trauma and upset as evidenced by chronic constipation, unprecipitated verbal outbursts, excessive emotional responses such as frequent crying, and vastly increased nail biting. (Complaint at ¶ 32.)

In or about July of 2003, Mother Doe reported her concerns regarding Defendant Dubeck's conduct towards the Minor Plaintiff to NECC and the District. (Complaint at ¶ 33.) On or about September 3, 2003, Mother Doe advised District and the Town of

Bolton of Mother Doe's concerns regarding the defendants' conduct towards Minor Plaintiff and the District's failure to provide Minor Plaintiff with an educational program that met the requirements of the Minor Plaintiff's IEP and requested an investigation immediately pursuant to Mass. Gen. L. ch. 258 § 4. (Complaint at ¶ 34.)

On or about September 24, 2003, the District advised the Plaintiffs that it denied "any wrongdoing or noncompliance with regard to [Minor Plaintiff's] educational programming" but would investigate the issue raised by in the September 3, 2003 chapter 258 notice of a "lack of personnel willing to work in the [Minor Plaintiff's] home." (Complaint at ¶ 35.) Despite being put on notice of Defendant Dubeck's physical and emotional abuse of Minor Plaintiff, not one of the Defendants has notified the Worcester District Attorney's Office or the Commonwealth of Massachusetts' Department of Education regarding the physical and emotional abuse of Minor Plaintiff. (Complaint at ¶ 36.)

On or about September 3, 2003, Plaintiffs sent a Massachusetts General Laws chapter 258 notice to the District and Town. (Complaint at ¶ 40.) On or about September 4, 2003, Mother Doe asked NECC to return to Minor Plaintiff a number of items that Minor Plaintiff had earned as rewards as part of his educational program at NECC including, without limitation, a Short Circuit videotape movie bought by Mother Doe and taken by Defendant Dickson, Minor Plaintiff's shorts, Minor Plaintiff's cassette tapes which he made at home and brought in, but were taken by Defendant Dickson, Madonna compact disc, Celine Dion compact disc, Metallica compact disc, Avril Lavigne compact disc, Natalie Merchant compact disc, Klumps videotape movie, approximately ten Sponge Bob videotapes, The Simpson's videotape, The Dinosaur

videotape movie, and an Avril Lavigne music videotape, all of which were either bought or made specifically as educational rewards for Minor Plaintiff by NECC and its employees including Defendant Dubeck. (Complaint at ¶ 41.) On or about September 16, 2003, NECC refused to return those items listed above. (Complaint at ¶ 42.) On or about September 16, 2003, Minor Plaintiff's tutor made a written request to the District that she be provided with a number of educational supplies for Minor Plaintiff's educational program including a Children's calculator, large lined and dotted paper, scissors, a kindergarten and first grade level math workbook, math flashcards and counting bears, second and third grade level reading books, second and third grade level reading comprehension books, a children's handwriting practice book, and a first of second grade level science book, and funds to purchase rewards for the learning incentive "prize box."  (Complaint at ¶ 43.)

On or about September 24, 2003, the District responded to the Plaintiff's September 3, 2003 Massachusetts General Laws chapter 258 notice by denying all charges except for the issue concerning the Defendant School District's failure and/or delay in obtaining personnel to perform the home study program at Minor Plaintiff's home. (Complaint at ¶ 44.) To date, the District has not provided all of the items requested by Minor Plaintiff's tutor. (Complaint at ¶ 45.)

Prior to filing the Complaint the Plaintiffs' brought their claims before the Massachusetts Bureau of Special Education and, while some issues were resolved, the BSEA hearing officer acknowledged that she could only correct problems going forward and had no authority to correct past wrongs.

The Plaintiffs filed their Complaint on or about June 6, 2005 and properly served the same on the District. The Plaintiffs agreed to extend the time for the District to respond to the Complaint and, upon information and belief, the deadline for filing a response to the Complaint was extended. At no time, prior to filing its motion to dismiss, did the District's counsel ever contact Plaintiffs' counsel in a good faith attempt to resolve or narrow the issues presented in the motion to dismiss as required under Local Rule 7.1(A). The District's counsel failed to certify on its motion to dismiss that it had complied with Local Rule 7.1 as required under Local Rule 7.1(A)(2).

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), in reviewing motions to dismiss, Courts must "accept the complaint's allegations as true, indulging all reasonable inferences in favor of [the plaintiff]. *Kiely v. Raytheon Co.*, 105 F.3d 734, 735 (1st Cir. 1997) (citation omitted); *Morris v. Massachusetts Maritime Academy*, 409 Mass. 179 (1991); *Hobson v. McLean Hosp. Corp.*, 402 Mass. 413, 415 (1988) (*quoting Nader v. Citron*, 372 Mass. 96, 98 (1977)). The Court should dismiss the complaint only if it is clear that the plaintiff can prove no set of facts, consistent with the allegations in the complaint, that would support relief. *Kiely v. Raytheon Co.*, 105 F.3d 734, 735 (1st Cir. 1997) (citing *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Vartanian v. Mondanto Co.*, 14 F.3d 697, 700 (1st Cir. 1994)); *Morris v. Massachusetts Maritime Academy, et al.*, 409 Mass. 179 (1991); *Hobson v. McLean Hosp. Corp.*, 402 Mass. 413, 415 (1988) (*quoting Nader v. Citron*, 372 Mass. 96, 98 (1977)). When determining whether a complaint should be dismissed, the Court may only consider the allegations presented in the Complaint and not any other evidence submitted by either party. Fed. R. Civ. P. 12.

## ARGUMENT

1. **The District's Motion to Dismiss Should be Denied Where the District Failed to Comply with Local Rule 7.1.**

Local Rule 7.1 requires that counsel must confer with opposing counsel in a "good faith" attempt to resolve or narrow the issue presented in a motion. Local Rule 7.1 also requires that all motions must include a certification acknowledging that they have complied with Local Rule 7.1. At no time, prior to filing its motion to dismiss, did the District's counsel ever contact Plaintiffs' counsel in a good faith attempt to resolve or narrow the issues presented in the motion to dismiss as required under Local Rule 7.1(A). Moreover, the District's counsel failed to certify on its motion to dismiss that it had complied with Local Rule 7.1 as required under Local Rule 7.1(A)(2). Therefore, the District's Motion to Dismiss should be denied.

2. **The Minor Plaintiff's Negligence Claims (Counts XII and XV) are not Barred by Chapter 258, § 10(j).**

Minor Plaintiff's claims are not barred by Chapter 258, § 10(j) as the individual defendants were acting on behalf of the District. Under section 10(j), "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortuous conduct of a third parson, which is not originally caused by the public employer or any other person acting on behalf of the public employer." Mass. Gen. Law. Ch. 258, § 10(j). The principal purpose of § 10(j) is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party. *Brum v. Dartmouth*, 428 Mass. 684, 696 (1999).

The District, citing to *Brum*, argues that they have immunity under section 10(j) as they are not responsible for the acts of a third party. In *Brum*, the Supreme Judicial

9

Court held that, under section 10(j), the town was immune under section 10(j) as they did not cause the danger that resulted in the plaintiff's death, but rather failed to take action to protect the plaintiff from danger.

Unlike *Brum*, the Plaintiffs are not complaining about the acts of third parties, but rather are complaining about the acts of agents of the District with whom the District contracted to provide special education services to the Minor Plaintiff. The District has not disputed that it contracted with NECC to provide educational services to Minor Plaintiff, which services, the District was required to provide to the Minor Plaintiff. The individual defendants were employed by NECC who contracted with the District to provide special educational services to the Minor Plaintiff. Pursuant to that contract, the individual defendants, during the course of their employment duties with NECC under its contract with the District, injured the Minor Plaintiff as set forth in more detail above. All of the allegations set forth in the complaint concerning the individual defendants occurred on the grounds of NECC during school hours. As such, NECC and the defendant individuals were all acting on behalf of the District, a public employer and as such, the District is not exempt under Mass. Gen. L. ch. 258 § 10(j) and Plaintiffs' negligence claims should not be dismissed.

3. **The Plaintiffs' have alleged sufficient facts to support their § 1983 claim in that they have alleged that the District acted with deliberate indifference in misrepresenting to Mother Doe, after hearing her complaints concerning the New England Center for Children and its employees' conduct towards John Doe and that they would look for and move John Doe to another school.**

To make a § 1983 claim a plaintiff must prove sufficient facts that "(1) the conduct complained of was committed by a person acting under color of state law; and (2) [that] this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Lipsett v. University of Puerto Rico*, 864

F.2d 881, 901-02 (1st Cir. 1988). The Minor Plaintiff has a constitutional right to equal access to education, a right to be free from sexual discrimination and a right to bodily integrity and, specifically to be free from a public school teacher's sexual abuse. *Washington v. Glucksberg*, 117 S. Ct. 2258, 2261 (1997) ("In addition to the specific freedoms protected by Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the rights to direct education and . . . bodily integrity"); *Hinckley v. Baker*, 122 F. Supp.2d 48 (D. Me. 2000) (*quoting Doe v. Claiborne County*, 103 F.3d 495, 506 (6th Cir. 1996) (*citing Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253, 1255 (10th Cir. 1996)). *See also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-451 (5th Cir. 1994); *Stoneking v. Bradford Area Asch. Dist.*, 882 F.2d 720, 722 (3rd Cir. 1989).

Mother Doe repeatedly complained to the District about NECC's and its employees' treatment of John Doe as early as January of 2003. Mother Doe insisted that John Doe be moved to another school and the District agreed. The District advised Mother Doe that it would immediately begin to look for another school at which to place John Doe. The District did not take that promised action until August of 2003 after John Doe had been assaulted by NECC and its employees. Clearly, the District had notice, agreed that John Doe should be moved and its failure to take the promised action to relocate John Doe was an act of deliberate indifference which, but for that failure, John Doe would not have continued to be assaulted by NECC and its employees. Therefore, the District's deliberate indifference was conscience shocking and Plaintiffs' § 1983 claim should not be dismissed.

In addition, the District argues that the Plaintiffs' claims should be dismissed as they failed to exhaust their administrative remedies. However, Plaintiffs brought their

claims before the Massachusetts Bureau of Special Education and, while some issues were resolved, the BSEA hearing officer acknowledged that she could only correct problems going forward and had no authority to correct past wrongs. Clearly, the Plaintiffs complied with the requirement to exhaust their administrative remedies.

4. **Title IX does not preempt § 1983 claims against non Title IX funding recipients**

Despite Defendants' arguments, Title IX clearly does not preclude a § 1983 action against the District where there is no express or implied right of action under Title IX against an individual tortfeasor who is not a Title IX funding recipient. The courts agree that Title IX does not preclude § 1983 claim *individual* state actors such as teachers.[1] *See also Canty v. Old Rochester Regional Sch. Dist.*, 54 F.Supp.2d 66, 76 (D. Mass. 1999) (Young, C.J.) ("Title IX does not present a 'sufficiently comprehensive' remedial scheme to justify preclusion under *Sea Clammers* because Title IX does not allow recovery from individuals.") In fact, the First Circuit has specifically held that the "liability of supervisory officials must be established, if at all, under section 1983, rather than Title IX." *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir. 1988). Moreover, even if there was an implied right of action against non-funding recipients under Title IX as the remedial devices provided in Title IX are not sufficiently comprehensive, in fact, they are non-existent and it is only through § 1983 that a right of action against funding

---

[1] *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 727 (6th Cir. 1996)(§ 1983 substantive due process claim against state actors not subsumed by Title IX); *Seamons v. Snow*, 84 F.3d 1226, (10th Cir. 1996) (holding that Title IX does not bar § 1983 claim based on constitutional right). *Crawford v. Davis*, 109 F.3d 1281, 1282 (8th Cir. 1997)(§ 1983 claims against teacher tortfeasor allowed only as to official capacity, not as to teacher's individual capacity).

12

recipients was even implied. *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Assoc.*, 453 U.S. 1, 20 (1981).[2]

In the instant case, Title IX does not expressly set forth any enforcement provisions let alone "unusually elaborate enforcement provisions." Rather, the Supreme Court as a result, in part, of the very lack of express statutory language, the Supreme Court implied a private right of action under Title IX based, essentially, on § 1983 itself which had previously been used to imply a private right of action under Title VI, a statute nearly identical in language. *Cannon v. University of Chicago*, 441 U.S. 677, 697 n.21 (1979). Thus, it is ludicrous to argue that Title IX's *express statutory* remedies are "sufficiently comprehensive" as to preclude a § 1983 claim.

In the instant case, the District has not established whether it is a Title IX funding recipient. This argument, in fact, would be more appropriately addressed in a motion for summary judgment as it clearly required that additional evidence be provided as to whether or not the District receives Title IX funding. Moreover, the Plaintiffs' § 1983 claims are based on NECC and its employees' tortuous acts for which there is no express or implied right of action under Title IX. Therefore, Title IX does not preempt Plaintiffs' § 1983 claims against the District and Plaintiffs' § 1983 claim should be not dismissed.

---

[2] In *Sea Clammers*, the Supreme Court held that the "unusually elaborate enforcement provisions" of two statutes which set forth federal standards, created comprehensive federal regulations, authorized government agencies to respond to violations of the statutes with compliance orders and civil suits, and expressly provided for citizen suits for injunctions to enforce the statutes warranted a finding that statutes preempted federal common law claims. 453 U.S. at 13-15.

5.  **The Plaintiffs' have alleged sufficient facts to support a Title IX Claim (COUNT XVI) and the District's control over NECC and its employees for, among other things, the District could have relocated Minor Plaintiff to another school as requested by Mother Doe**

Under Title IX, a plaintiff must show that she was "subjected to harassment severe enough to compromise the victim's educational opportunities and that the institution had actual knowledge of the harassment and exhibited a deliberate indifference to it. *Wills v. Brown University*, 184F.3d 20, 26 (1st Cir. 1999) (*citing Gebser v. Lago Vista Indep. Sch. Dist.*, 118 S.Ct. 1989, 1997-99 (1998)). "If the institution takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment. . . . Of course, if it learns that its measures have proved inadequate, it may be required to take further steps to avoid new liability." *Id.* The First Circuit has held that "in a Title IX case, an educational institution is liable upon a finding of hostile environment sexual harassment . . . if an official representing that institution knew, or in the exercise of reasonable care, should have known, of the harassment's occurrence, unless that official can show that he or she took appropriate steps to halt it." *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir. 1988).

Mother Doe complained to the District about NECC's and its employees' conduct towards her son and asked and even insisted that the District move John Doe to another school. As Plaintiffs allege, the District agreed with Mother Doe and told her they would search for a new school. However, the District did not look for a new school until nearly eight months later, after a police investigation into an NECC employee's treatment of John Doe was initiated. The District clearly had control over whether John Doe remained at NECC. In addition, the District had control over NECC and its employees to the extent that it instructed the NECC on what type of schooling it wanted for John Doe

pursuant to the IEP.

The District acknowledges in its Motion to Dismiss, that the Supreme Court has held that a district can be liable for damages where the district acted with deliberate indifference to acts of harassment of which it had actual knowledge. Defendants' Motion to Dismiss at p. 16 (*citing Davis v. Monroe County Board of Education*, 526 U.S. 629, 644 (1999)). Plaintiffs have a recognizable right of action under Title IX for the District's deliberate indifference in failing to relocate John Doe in response to Mother Doe's complaints as promised. Thus, Plaintiffs' Title IX claim (Count XVI) should not be dismissed.

**6.      Plaintiffs Have an Implied Right of Action under Mass. Gen. L. ch. 119, § 51A and Count XVII should not be dismissed.**

Tort claims may be based on special duties created by statute. *Molinari v. Royal Heights Construction Co.*, 1998 WL 1181667 * 6 (Mass. Super.). In *Molinari*, the Superior Court denied the defendant's motion for *j.n.o.v.* holding that the state building code placed a special duty on defendant to build properties in compliance with the code and a violation of the code was a valid basis for a negligence claim. 1998 WL 1181667 *9. Likewise, Massachusetts law places a special duty on school officials to report child abuse whenever there is a "reasonable cause to believe that a child under the age of eighteen years is suffering physical or emotional injury." Mass. Gen. L. c. 119, § 51A. Defendant D'Agostino breached her statutory duty to report her own abuse of prior female students and of Jane Doe and, in so doing breaching, caused Jane Doe to suffer continuing physical and emotional injury.

In fact, language in § 51A specifically admits that § 51A can be the bases for common law tort claims by creating an immunity to civil or criminal liability for filing a

report in good faith, but not for failing to file a report. Mass. Gen. L. c. 119, § 51A ("No person so required to report shall be liable in any civil or criminal action by reason of such report . . . [nor] liable in any civil or criminal action by reason of such report if it was made in good faith . . .") Moreover, § 51A specifically creates a fine for failing to report child abuse. *Id.*

John Doe is a person which the Massachusetts legislature meant to protect under Mass. Gen. L. ch. 119, § 51A. The District is a person who is required to report suspicions of child abuse under Mass. Gen. L. ch. 119, § 51A. Where the District failed to make a report under Mass. Gen. L. ch. 119, § 51A, John Doe has an implied right of action under Mass. Gen. L. ch. 119, § 51A against the District and Count XVII should not be dismissed.

7. **Plaintiffs have alleged sufficient facts to make a prima facie case that their rights under Mass. Gen. L. ch. 76, § 5 were violated when the District and its agents discriminated against John Doe.**

Mass. Gen. L. ch. 76, § 5 prohibits discrimination based on sex, for all students "in obtaining the advantages, privileges and courses of study of such public schools." Massachusetts courts have held that "Chapter 76 of the General Laws expressly allows a student who has been unlawfully excluded from the public schools to recover in tort." *Martin v. Town of Wilmington* 13 Mass. L. Rptr. 371 (May 23, 2001).

Whether or not the NECC would be considered a public school for the purposes of providing special education services to John Doe on behalf of the District is an argument more appropriately addressed in motions for summary judgment. However, John Doe was only attending the NECC, a private institution, as part of his public education. John Doe never used any private funds to pay for his schooling at NECC. Indeed, John Doe's education at NECC was procured through public funds. The District

contracted its duty to provide public education to John Doe to NECC. By contracting with NECC to provide public special education services to John Doe, the District, in essence, made the NECC a public school for all intents and purposes as to its provision of special education services to John Doe. Therefore, the Plaintiffs' state claim that the District and its agents - NECC and its employees - discriminated against John Doe in his public schooling (Count XIII) should not be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss should be denied.

Respectfully submitted,
Plaintiffs,
JOHN DOE, ppa Mother Doe and
MOTHER DOE, individually,
By their attorneys,

*/signature/*
Harold Jacobi, III (BBO #248980)
Nancy Sue Keller (BBO #644515)
JACOBI & ASSOCIATES
Four Militia Drive, Suite 14
Lexington, MA  02421
Tel:  781-274-0405

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail on September 28, 2005.

*/signature/*

Dated:  September 28, 2005